Your honors, good morning. My name is Michael Levine and I represent Mr. Lincoln. I'd like to save a few minutes for rebuttal if I may. Your honors, Agent Wampole's deliberate failure to read Mr. Lincoln his Miranda warnings warranted suppression of the statements that he made to Agent Wampole. Particularly, this is particularly true since the Supreme Court's holding in Missouri v. Seibert. No warnings at all were given. But the statement he made was a violation of law in and of itself. I thought the law was clear that that kind of a statement wouldn't be suppressed. Well, normally that's true, except in this case there are a couple of underlying assumptions that I want to draw the attention to and would distinguish this case from that line of cases. Number one, it's not entirely clear that this is a new threat, though the briefs more or less conceded it, and even below, Judge Reddin assumed it was a new threat. Well, does it have to be a new threat? Isn't it sufficient that it's a No. What Agent Wampole did here was essentially go to the defendant and ask him about the workbook threats. And if you look at the excerpt of Record 17, we have the transcript of Judge Reddin actually asking Agent Wampole. Judge Reddin asked Wampole, quote, you asked him, why did you say those things in your workbook? And Wampole answered, quote, yeah, I asked him about the threats he had made in his workbook. And then he went into his reasoning for wanting to kill the president. Essentially, what you have here is an agent eliciting a confession or an elaboration of why he made the threats in the workbook. So they're not new threats. They're an explanation of old threats that he made. And frankly, I did not brief this well, Your Honor. I have to fall on my sword. I did not brief this well. I overlooked it just as Justice Judge Reddin overlooked it, though he was smarter than I because it was something in the opinion that I should have picked up on. He said even assuming it was a new threat or the supposed new threats. And in my briefing, I did not specifically point out and make the argument I'm making to you now, Your Honor, in all candor. But I should have and I am making it now because it's true. Wampole did not elicit new threats. And a fair reading of the record, he's eliciting a confession and an explanation of the old threats. Second, there's a second way to Ninth Circuit. And yeah, the doctrine generally is true that if it's a new threat by itself, that should not be suppressed. But here in Mitchell, though, we did not have an agent virtually inducing the new threat. And here Judge Reddin makes a finding that in essence, the agent should have known, should have known after an hour's engaging Lincoln in conversation. And the so-called even if you assume it's a new threat for the sake of argument, the so-called new threat coming only after 30 minutes approximately of the agents trying to induce, in my judgment, it's a fair reading of the record. Now, Mitchell, in Mitchell, there's nothing like that. In Mitchell, the person is arrested at the Hawaii, at the Honolulu Airport. Agents have received word that he may have threatened the president. They go to him. They say, is your name Mr. Mitchell? And he virtually immediately makes a new threat. There was no no evidence that the agent tried to induce a threat or or made statements that were bound to lead to a threat. And that's what happened in this case. What's the relevance of this alleged inducement? It's not entrapment, is it? Well, I didn't raise entrapment, but it's it's it's it has to figure in your calculus of. Well, this way, we have here an agent deliberately saying, I am not going to read this person Miranda warnings. I am not going to do it. Instead, I'm going to see I'm going to see if I can get a new threat. I'm going to see what he has to say about the old threat. Now, if it takes me an hour to do that, it's not fair. It's it's basically unfair, number one. And it's the same thing in Seibert, in a sense. And what did they do in Seibert and Seibert? They're trying to do a good thing. They're trying to get a confession to a murder from society's point of view. That's a very good thing. But and they deliberately don't read the Miranda warnings. And then they get the confession. But this court, the Supreme Court, excuse me, this court actually decision was abrogated in Orso. This court and bank had held that that's OK. But the Supreme Court abrogates Orso and says, no, even in a murder case, a murder confession, you can't have agents, which is a beneficent thing to get. Presumably, you can't have agents deliberately violating Miranda. And and that's what happened here. No Miranda warnings at all. So in that sense, Your Honor, if I've answered your question, it figures into the calculus of the principle of our agents going to obey the Miranda rule. Is there going to be an evaluation of danger to the president exception to the Miranda rule? There hasn't been one yet. I know there's no murder exception to the Miranda rule. The government is basically asking you to carve an exception out of Miranda to evaluate whether someone is a which is a lot more severe. I suggest there's no exception warranted here. I would like to turn to your honors and I would invite you. I would invite you to look at the excerpt of record page two and three for my my last argument I'm going to raise here because I think I think this is critical. We have here, E.R. number two, we have the envelope that was sent, an envelope to George, President George, where George misspelled coming from prison, identifying the prisoner's name, identifying his prison number. And then we have the so-called threat itself, Your Honor, on E.R. three. Now, the question is the question ultimately you have to decide, and I believe it's a de you. You have to decide. Would a reasonable person in Mr. Mr. Lincoln's position, it's an unusual test, but I believe I have it correct. Would it would a reasonable person in Mr. Lincoln's situation believe that the person to whom this is sent, this letter was sent, would lender is the fulcrum for the evaluation of the threat? Well, as I understand the test, it's what a reasonable person in Lincoln's position, not Lincoln, but a reasonable person in his position, believe that the recipient of the letter would construe this as a threat. Now, what's what case are you relying upon? Well, I that's the way I read Hannah and that's the way I read Planned Parenthood, though that was a civil case. It's it isn't an odd way to phrase it, but that appears to be the test. But if that is the test, then you have to take the so-called reasonable person and plump him down into OCC prison and the intensive confinement unit. You have to make him a mentally disabled, mentally challenged person who can't spell, who's virtually illiterate. Well, that seems to me that approach seems to me to eliminate what I thought was fairly well settled as a judge by objective standards and not subjective standards. Well, really feeding into the equation, the state of mind of the sender, Lincoln, in this case, isn't that contrary to what all the cases say? I don't know that it's contrary to that, Your Honor, because it seems like if you look at Hannah itself, the language, unless it's it's out of context, but it's but it looks as if Hannah is saying and I think it's a quote, would a reasonable person in Hannah's position. I don't see that in Hannah's position. That's the difficulty I have with your analysis. I'm looking at page 1084 of Hannah and it says a statement written or in a context or under such circumstances where in a reasonable person would force to be. Yet that statement is in the first part of the opinion. I don't have the opinion in front of me, but there's another page in the opinion where they and that's the ambiguity where they say in Hannah's position. I'll have to go through it and I can send it later to the court, but I'm sure it's in there unless I had a senior moment when I wrote the brief. Your Honor's coming back. But under either test, under let's assume let's assume that that should be the test that the court that you have enunciated and Judge Schwarzer has enunciated. It's a reasonable person. And forget about forget about it being in in Hannah's position and Lincoln's position. Let's assume that's the test under either test. The question is, with a reasonable person, construe this as a serious threat to kill the president of the United States. Well, Judge Judge Redden found the letter by itself. No, he found no. And the government doesn't contest that. It hasn't contested in his brief. So this has already been found. No, there's no intent. There's no saying I'm going to kill him. There's no saying he should be killed. Well, that's all beyond argument. But the question is whether there's context in this case that gives meaning to that letter that it doesn't have standing alone. All right. Let's let's accept for the sake of argument. Let's accept that we look at the context. And that's what Planned Parenthood seems to suggest. We look at the context. What is the context? The context is six months earlier. Yes. He may. I can see a threat. Now, I maintain it wasn't a serious threat, but nevertheless, it was a threat. He said he wanted to kill the president of the United States. That was a threat. But he's not indicted for that threat. He wasn't charged with that threat. He's charged with this threat. Now, the question is, OK, we bring into evidence that old threat. Well, this threat has nothing to do with that old threat. That old threat was I wanted to get the exact words. I want to kill President Bush. But it's not in the context of a political context of since September 11th. It's not in the context. There's no there's no political context to that at all. That, if you will, is just a threat. If anything, you can see this letter is an amelioration. It's a it's a lesser statement. It's a saying, look, since 9-11, bin Laden is over here. Bin Laden is going to unleash this this war to come. And in this war to come, everybody's going to be killed, including you. There's no. And we have Judge Redden finding out finding, as a matter of fact, that he crosses out from the threat. And you can see where he has crossed out the pronouns us and we, they and them. He is dissociating himself from violence, unlike what he did six months earlier. So, yes, if we look at the context, but the context is all pointing towards, if you will, he's getting better. He's now taking out his frustrations, if you will, in the appropriate way, in a political way, in his ability, his mentally impaired ability, his learning disabled ability. He is turning, if you will, from a a true threatener. He's taking the proper course. Now, this is an abhorrent letter. I agree. It's a it's a distasteful, disgusting. It's screed. But at least he's writing. He's taking an approach of, if you will, writing, taking redress of grievances. He's doing what every patriot has a right to do. For those reasons, Your Honor, even in the context, I submit that this is not a true threat. If you consider everything together, it's not a true threat. Thank you, Your Honor. Counsel, you've exceeded your time, but we will give you one minute for rebuttal. Thank you. Good morning, Your Honors, and please the court. Mr. Levine, Frank Noonan appearing for the government. And first of all, with respect to the argument that Mr. Levine is making regarding that, the April statements to Agent Walpole were not new threats, but were simply something else. First of all, that wasn't raised before Judge Redden. I don't think it's fairly raised in the briefs. They say the defense never rests. And Mr. Levine is one of our one of our finer defense attorneys. And I've never known him to rest. But so I would object to that line of argument for those reasons. But secondly, if the court will look at the transcript, the actual verbiage that was used by Mr. Lincoln appears at excerpt of record page 13. And that's where he says he was planned. This is definitely a reference to a future event, planning to travel to Seattle, get a group of people together, travel to Washington, D.C., stake out the White House and shoot the president through an open limousine window. So I think that's a response to the to the theory raised this morning. Secondly, I think that Mr. Levine is correct in interpreting Hannah and Planned Parenthood as the fulcrum is the sender. And in the Planned Parenthood case in Bank, this court held defining true threat as a statement which in the entire context and under all the circumstances, a reasonable person. And I think the reference there is to the sender. And I think that's clear in the context of Planned Parenthood would foresee would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person. I don't think all circuits agree with that. Let me just ask you this, counsel. So then are you saying we have to consider in our analysis the fact that it's a person who's in prison, who has mental impairments when we determine whether or not a reasonable person would interpret this as being a threat? No, Your Honor. And I would rely on the Hannah case, the Orozco-Santillan case and Planned Parenthood for the proposition that it's an objective standard. I don't think it is. I don't think it's subjective. And I think Hannah rejected, as did Planned Parenthood, the theories advanced by the defendants in those cases that this court should apply subjective standards. Well, what does in the sender's position mean then? I think the sender's position refers to a reasonable person. And I think the reasonable person standard is used to embody the objective standard as well. I mean, I think they are sort of one and the same. I think when this court uses that kind of language, a reasonable person, as opposed, say, to a person like Mr. Lincoln, or an objective standard, that those are intended, in my view, to communicate the same thing, that this is an objective standard, that subjective intent is not required. So is there any difference between the reasonable person who sends a threat and the reasonable person who receives it? What is the difference? Your Honor, I thought about that this morning, anticipated that a little bit. I don't know. I mean, I think it's the same standard, perhaps, from a different viewpoint. But I think what the court needs to do, I would submit, would be to look at the language of the threat and to determine whether or not a person sending it or receiving it would interpret it consistent with the language in Planned Parenthood. And maybe that's why some of the other circuits, some of those cases are cited in the government's brief, have looked at it from the perspective of the recipient rather than the sender. But I don't know that that distinction is critical. I think what is critical is that it's an objective standard. And if I may, Your Honor, just a few points. I think the law and the facts are pretty well set forth in the brief. The factual predicate is the April 4th interview and then the September 2001 letter. I believe it is an objective standard. I believe that Planned Parenthood, Hanna, and Orozco all stand for the proposition that this court should look at that, as did the trial court, in the context in which it occurs. Well, what is it about the earlier interview with the agent that makes this letter into a true threat? Well, Your Honor, I would submit... It's not a true threat standing alone. Assuming, Your Honor, that it is not a true threat, then I think this court, as Judge Redden did, should assess the September letter, you will die real soon, George Bush, in context of the earlier statement that I'm going to travel to Washington and shoot the president through an open window. In other words, if there was some ambiguity in the latter, when you put it together with the former, it seems to me now the response, the common sense response is, this is really a threat. This is a true threat. This isn't just an isolated instance. And I think that the April statements give color to what follows. Well, suppose the letter had said, be careful because Osama bin Laden is after you and will kill you. Would that make it a true threat given the earlier statement to the agent? Probably not. So that's a little bit different. I don't know that I... Well, except he crossed out the we in the letter. Well, that's true, Your Honor. But I think the Planned Parenthood and Orozco all make that the fact that the threat may contain verbiage suggesting a third person is going to carry the threat out doesn't make it any less a threat. It doesn't have to be, I am going to kill you. It could be, as in Planned Parenthood, or somebody's going to kill you. That's a threat. But counsel, in Planned Parenthood, there was a discreet set of facts. The poster appeared and then someone was killed. The poster appeared, someone was killed. So we have a pattern there that gave eminence to the threat that we don't have here. I think that, I have to admit, we don't have quite the pattern. And my position is simply that we don't need that much of a pattern. You don't need the Planned Parenthood litany of poster death, poster death, to get to a true threat. That the statements to Agent Longpole, along with the letter, are sufficient. Well, on that theory, though, the statements that he made initially to the agent were a violation of the statute, right? But he wasn't prosecuted for that. That's correct, Your Honor. So what you're saying is if the government didn't prosecute the first violation, they get a second crack at it because he writes a strange kind of a letter. Your Honor, that's, I'm not saying that. Well, let's let him on to it. And I'm hoping the court won't see it that way. We used the prior threat because it did give context to the latter. And I don't know that that's terribly unusual in these kinds of cases. But I think to get into that is obviously getting outside the record. I would simply ask the court to focus on the two together and to find, taken those two, that the September letter is a true threat. Counsel, in your analysis, where does the First Amendment consideration come into play, if at all? I think the First Amendment consideration comes into play, Your Honor, in this way. If the words of the letter taken in context are a true threat, then they are outside the protection of the First Amendment. OK, but the judge found that the words in this letter were not a true threat. If the judge had found it not a true threat, he did. Well, oh, excuse me. I'm sorry, Your Honor. What he said, though, was maybe that's not a true threat, but the two taken together are a true threat. And that means that that analysis, I believe, therefore, is that the letter is a true threat. And if it is a true threat, and I think that's the thrust of all the decisions of this court under the First Amendment analysis, is that true threats can be punished. They're outside the protection of the First Amendment. So you don't, in your analysis, you never apply the First Amendment to the literal words of the letter? I do apply the First Amendment to the literal words of the letter, Your Honor. But I would apply the First Amendment not simply to the literal words, but also to the literal words taken in context. I mean, without some context, these cases wouldn't really make much sense. And if I can just very briefly, because I see I'm getting close to the end here, a couple of things, Your Honor. A brief comparison of the verbiage in this to other cases where true threats have been found. In the Bell Richard Eighth Circuit case, you will die in the next six months. In Callahan, essential Reagan and Bush be assassinated. In this court's decision in Gordon, Reagan's anti-Christ, I will kill him. In this court's decision in Merrill, kill Reagan. And then again in Mitchell, I will kill Reagan. And before I run out of time, I want to comment only very briefly on the Siebert analysis, which is simply this. I believe Siebert is very clearly distinguishable. Siebert involves a police officer who deliberately, and then there's, that's here. The agent said, I didn't give the Miranda warnings. But in Siebert, the officer didn't give Miranda warnings and then followed that with another interview. And that interview was intended to elicit statements about past conduct. Here, unlike Siebert, this agent talked with the defendant, admittedly without giving Miranda rights. But the defendant then made statements which by themselves are new crimes. Under this court's decision in Mitchell, which was an illegal arrest after which a defendant made statements. And then the Gordon case, which really almost mirrors the facts of this case. It's an 871, a presidential threat case where Miranda warnings are not given. This court found that with respect to the statements which were new crimes, the exclusionary rule would not apply. And I think that the defense counsel argues that they weren't new threats at all because the agent knew that such threats had been made before. And he was simply trying to induce the defendant to repeat his earlier statements. Your Honor, I would simply respond to that. That's the new theory that's raised on appeal. I don't think there's any evidentiary support in the record for that. I don't think that I don't think that that argument can be made on the facts of this case. I don't think there's any evidence. Very clear. And the agent conceded, the government conceded, then he concedes. Now, Miranda warnings weren't given. But the sort of conduct that Mr. Levine speaks to, I don't think is supported by the record. You said early in your argument that the letter was a true threat, even though it described conduct to be done by others. In other words, you will die too, George W. Bush, real soon. They promised that you would. Now, how can it be a true threat if he's describing conduct to be performed by people over which he has no control? Your Honor, I think that that issue I tried to suggest was addressed both in the Hannah case and in Planned Parenthood and also in the Callahan case out of the 11th Circuit. And I think those cases stand for the proposition that a threat needn't be a threat that the that the speaker or writer is going to do the harm. As a threat can a threat is a communication that the listener in the Ninth Circuit would interpret as a serious expression of physical harm. And that can come from another person in the same way. If I decide to write letters to to to an attorney and say, you're going to die because one of my friends in the office is going to kill you. That's a threat and equally disruptive. So that's someone that you ostensibly can affect. But how could he affect whether bin Laden killed the president? Well, two things, Your Honor. One, I don't think as a legal matter that that doesn't sound right. I think as a legal matter, it doesn't matter. I don't think it matters. But secondly, the letter itself is a threat. And there are references to bin Laden, but it's not completely clear from the text of the letter that that's the only threat that is made. I think there is. You will die, too, real soon. George Bush, Your Honor, is a threat. And I'm way, way over my time, but I'm pleased to answer questions if the court has some. It appears there are none. Thank you. Thank you very much. One minute for rebuttal. Your Honor, I'm going to be 10 seconds and just point the court to the Hannaf decision on page 1086. I saw that. I'm sorry? I saw that. Oh, you saw that. Thank you, Your Honor. I have nothing further. Thank you. All right. Thank you. Thank you to both counsel for a case well argued. The case just argued is submitted for a decision by the court.
judges: T.G. Nelson, Rawlinson, Pollak